**Crouse v. Commonwealth**

*Ralph B. Pinskey,* for claimant.
*Stewart M. Bliwas,* for Commonwealth.

MacPHAIL, *P. J.,* May 6, 1976—Apparently, this is another case of first impression under the Eminent Domain Code, Act of June 22, 1964 (Spec. Sess.) P.L. 84, 26 P.S. §§1-101, et seq., and the so-called Junkyards Act of July 28, 1966 (Spec. Sess.), P.L. 91, 36 P.S. §§2719.1, et seq.

Factually, the Commonwealth, by the Secretary of Transportation, has filed a declaration of taking under section 8 of the Act of 1966, supra, 36 P.S. §2719.8. In paragraph 4 of the declaration of taking, the Commonwealth states:

"4. The purpose of this condemnation is to dispose of a junkyard located on premises adjacent to the above captioned Federal Aid Primary Highway by acquiring all right, title and interest in the junk located thereon and the right to enter upon the property to remove the same."

In paragraph 7 of the declaration the Commonwealth states:

"7. The nature of the title condemned is all right, title and interest in the junk located on the premises shown on the said plan, and the right to enter upon the aforesaid premises to remove the said junk."

On the schedule of condemned property attached to the declaration of taking, the Commonwealth has entered this language:

"This is not a condemnation of the land but of the junk located thereon and the right to enter upon the premises to remove the said junk."

The condemnee has filed preliminary objections

to the declaration of taking, only one of which it has preserved for argument before us. The condemnee insists that under the provisions of the Junkyards Act, the Commonwealth is obligated to condemn not only the junk on the real estate but the real estate itself. The Commonwealth contends that it has the right to condemn the junk without condemning the land on which it is situated and, since the land is not necessary to serve the purpose of the taking, the Commonwealth is not required to include the land in the taking.

As we have previously noted, there are no cases cited to guide us in this matter. Therefore, we must examine the statutory language. In section 1 of the Act of 1966, supra, 36 P.S. §2719.1, the legislature notes that it has found that it is in the public interest and for the public welfare to regulate the location and maintenance of junkyards adjacent to the highways of the Commonwealth. A junkyard is defined in the act, §2719.2 (4), as "any outdoor establishment or place of business which is maintained, used or operated for storing, keeping, buying or selling junk. . . ." Junk is also defined in the statute. Section 7 of the act, 36 P.S. §2719.7, gives the secretary, under certain conditions, the authority to "remove, relocate or dispose of the *junkyard*." (Emphasis ours.) Section 8, 36 P.S. §2719.8, authorizes the secretary to condemn such property as shall be necessary to carry out the provisions of section 7. Property is not defined in the act nor is it defined in the Eminent Domain Code, supra, although the latter act does define personal property. While, at first blush, it may seem significant that personal property is defined to distinguish it from real property, in fact, the distinction is important only in a determination of damages.

It seems to be the contention of the condemnee that since a distinction is made between junk and junkyard, there is an implication that the word property means junkyard and that term involves real estate.

Of course, all authority to exercise eminent domain procedures is derived from section 10, article I, of the Constitution of Pennsylvania (which is almost identical with article XI of the Constitution of the United States) wherein it is provided: ". . . nor shall private property be taken or applied to public use, without authority of law and without just compensation first made or secured."

It has been held that the power of the Federal government to take property under eminent domain applies to personal property as well as real property: Daily v. United States, 90 F. Supp. 699 (Ct. of Claims, 1950), citing United States v. Klamath and Moadoc Tribes, 304 U.S. 119, 58 S. Ct. 799, 82 L.Ed 1219 (Ct. of Claims, 1938). The Supreme Court of Pennsylvania mentioned in dicta that there may be occasions when money might be taken by the State in the exercise of its powers of eminent domain: Hammett v. Philadelphia, 65 Pa. 146 (1870). It is certainly unquestionable that the Commonwealth must pay for personal property which is condemned as a part of real estate. Thus, the Commonwealth was required to pay damages for a large deposit of coal or silt containing recoverable coal which lay upon real estate condemned for highway purposes and which was removed by the Commonwealth to land which was neither owned nor controlled by the condemnee: In re Condemnation of Legislative Route 1,005, 65 Schuyl. 33 (1969).

It will be apparent, however, that none of the

above cases really addresses the issue now before us: can the Commonwealth condemn junk without at the same time condemning the real estate on which the junk is located? We find the provisions of section 7 of the Act of 1966, supra, to be particularly helpful. There, the Commonwealth is given authority to remove, relocate or dispose of a junkyard. Obviously, the Commonwealth could relocate the junkyard, remove it or dispose of it without doing any harm to the real estate whatsoever. Section 8 authorizes the Commonwealth to condemn such property *"as shall be necessary"* to carry out the provisions of the preceding section. In its declaration of taking, the Commonwealth condemns the junk (which it must do to dispose of it) and an easement to enter on the premises to remove the junk (which it must have in order to avoid being a trespasser). Once the junk is removed, the Commonwealth has no further interest in the real estate, for the purpose of the condemnation has then been accomplished. The real estate may then be used by the owners for any lawful purpose.

In another factually unusual case, the Commonwealth condemned an aerial easement and that portion of the condemnee's land where 12 pillars for the support of an overhead highway actually touched the ground. The condemnees contended that the entire real estate within the spaces between the pillars should have been included in the taking and that they should be compensated for it. The court in Cavalier Appeal, 408 Pa. 295, 183 A. 2d 547 (1962), noted that the condemnees had free and uninterrupted use of the land around the pillars and between them. In denying the appeal of the condemnees, the court said, at page 300:

"To require a condemning authority to acquire

property interest not needed in its project and to pay the property owner therefor when he has the undiminished use of his property, is to subject the condemnor to prohibitive costs and to permit the landowner to obtain a windfall. The condemnor need only take so much property as is needed for its purposes."

In summary, we conclude that the Commonwealth is not required by the provisions of the Act of 1966, supra, to condemn the real property upon which a junkyard is located in order to remove, relocate or dispose of the junkyard. It may well be that the consequential damages or benefits to the landowners by reason of the removal of the junkyard will be an item of damage to consider at the appropriate time. That, however, is not the question before us now.

## ORDER

And now, May 6, 1976, it is ordered that the preliminary objections of Wade L. Crouse be and the same are hereby overruled.